The court will proceed to the second case, Islam v. Lynch. Ms. Bennett. Good morning, your honors. My name is Jennifer Bennett. May it please the court, I'm appearing today on behalf of attorney Richard Trace on behalf of the petitioner, Mr. Barshan Islam and his wife Farhana Islam. Mr. and Mrs. Islam are from Bangladesh. They entered the United States in 2011. They came as visitors, they overstayed, and they quickly sought asylum within one year of their entry. The asylum officer denied their application, referred them to court, at which time in 2006, with the assistance of counsel, the petitioners provided supplemental documents corroborating evidence in support of their asylum claim. At that time, Immigration Judge Vinacore here in the Immigration Court in Chicago referred the case back to the asylum office a second time, or actually a first time, but the second time they'd appeared in front of an asylum officer. The parties again appeared, interviewed, and their case was referred for a second time back to the Immigration Court, at which time they proceeded to a merits hearing before Judge Vinacore. The original application was filed before the Pre-Real ID Act took place, and the supplemental documents were filed after 2006. The judge applied the Real ID Act, even though the original application was before, and the second part was after. In this case, Mr. Barshan Islam's father was an internationally known Fulbright scholar, and Mr. Islam testified extensively about his father's arrest, which in the early days during the Liberation Wars in Bangladesh in politics. As a result, Mr. Islam became heavily involved in what's known as the Bangladesh Awami Party. It transfers from Urdu to English to the People's League. He joined this league and became heavily involved with demonstrations, political activities, and speaking out against the opposing party, the Bangladesh National Party. In this decision, or in this case, Mr. Islam and his wife testified fairly extensively about the incidents of persecution that he suffered, which spanned for a period of over almost 20 years. The problem in this decision is that the judge reached an adverse credibility finding and determined that the petitioner lacked credibility because of purported inconsistencies between his original application and his testimony. Now, Your Honors, I stood before this court just a couple of weeks ago with an asylum case and made the same argument to you, although that case was different. It was about particular social groups, and this is about an adverse credibility finding. The same argument, I believe, applies in that Mr. Islam was not changing his story. He was supplementing his story, as we all know. Yeah, but the main problem that IJJ had was the fact that in his initial 2004 asylum application, he hadn't described any mistreatment, even though he talked about extensive abuse later on, and he rejected the story that Islam changed his story, that he had told his lawyer about the past mistreatment. I mean, that was really the big inconsistency that IJJ pointed to. Sure, Your Honor. I do understand that, and again, we would maintain, though, that he did not change his story. On the asylum application, as I was just about to explain, the form only provides us a block for approximately 10 lines of text. As a new immigrant into the country who barely speaks English, it's very difficult to decipher exactly what should be written. Mr. Islam detailed his fear of returning the best that he could in that block, maintaining, of course, that he, or considering, of course, that he still had fear at the time he was in the block, that English was not the best. He did detail his basic fear, and of course, during the course of, you know, a several-hour merits hearing before the judge, much more detail is going to come forth, and at that time, he was able to elaborate. He took the time to think through all of the persecution to present a very fair case to the judge. Now, he was represented by counsel when he filled out that first application, right? He was represented by former counsel, Your Honor. That's true. He did explain that he, you know, there was a little bit of inconsistency and confusion about what he told the lawyer and what he did not tell the lawyer. In his mind, and I think he made this clear during his testimony, he told the first lawyer about the extensive persecution. Now, did he provide every single detail? We don't believe that he did, and he did provide that to the judge during testimony, and I see that my time is up. No, you have, you're in your rebuttal time, but you still have time. Sure. So, in summary, we would just argue that the judge didn't give him a fair chance in determining, looking at the testimony and looking at the evidence. We're just not sure what more the judge would want. Although the judge has detailed and the board has detailed a number of inconsistencies, they haven't explained how those inconsistencies actually go to the heart of the claim, nor have they provided cogent, detailed, and analyzed reasons, as required by Balagoon and Siddiqi and a number of other decisions by this court. But, you know, when he applied for, Ms. Bennett, for relief in this case, what was it, 06? It was in 2004, actually. 2004. That's about, what, 33 years after the war? Yes. And is there any indication of what transpired between 71 and 04? Absolutely. That's an excellent question, Your Honor. I actually read extensively over the past week myself online, and there's still severe tension between the two parties. Although currently the Awami League Party is in power, every other term it's gone back and forth, and each election, as detailed, has been heavily criticized with severe tension. There's substantial instability still. There was just, as recent as January, an execution of a high leader with conflict between Pakistan and Bangladesh. So there's ongoing tension. Well, that's not going to change then. It affects everybody, doesn't it? Well, it affects everybody, but Mr. Islam in particular is concerned because of his outright relentless persecution of his, or relentless, excuse me, not persecution, relentless pursuance of his beliefs. As he's described, he's been heavily involved and spoken out a number of times involved in demonstrations, and he's had severe past persecution happen to him, incidents which he's testified involving arrests, beating, kicking. But isn't that the one that he was being, Awami is in charge or whatever you want to call it now, right? Correct. And that's what he was part of. So doesn't that change the complexion of going back there? Well, I don't believe it does, Your Honor, because as I just said, the parties, even though they're in power now, they just won the election. They were in power, and then the BNP was in power, and then the Awami was in power. Each term, they keep switching, and it's extremely, extremely close between the two parties, and there's extreme instability and substantial tension still existing. So just because they're in power doesn't mean that he's safe and okay. All right. Thank you, Ms. Bennett. Thank you, Your Honors. Ms. D'Aminino? May it please the Court, Lisa D'Aminino on behalf of the Attorney General, good morning to you all. The only issue in this case is whether the evidence in this record compels a reasonable fact finder to determine that Mr. Islam testified credibly. In this pre-real ID Act case, as we've been discussing, Mr. Islam first sought asylum from Bangladesh in 2004 based solely on his father's political activities. His application made no mention of any political opinion he held, made no mention of any political participation, nor did it make any indication that he had been mistreated. Two years later, Mr. Islam alleged an entirely different claim based on what he says is extensive political participation dating back to 1988. After the conclusion of removal proceedings in which he was represented by counsel throughout and provided a second opportunity to present his claim before the asylum office, the judge determined that Islam was not credible based on material inconsistencies and omissions. The Board agreed that the two asylum claims were inconsistent and that he failed to adequately explain the inconsistency between the 2004 and 2006 claims. Based on its new review of the evidence, the Board also agreed that Mr. Islam testified inconsistently in 2013 with his 2006 declaration in many instances regarding pivotal events of mistreatment. And these instances of mistreatment are the very crux of his claim. Mr. Islam has here utterly failed to show that the evidence compels a contrary finding. And in fact, in his opening brief to this court, Mr. Islam does not correctly articulate the standard of review, which is the highly deferential substantial evidence standard. He mentions the abuse of discretion standard several times, and he also fails to clearly address what evidence he deems is compelling to reverse the agency's adverse credibility determination. As we've been discussing, the 2004 application merely stated that his father had faced threats and retaliation due to his longstanding support of the Awami League in Bangladesh, and that he feared returning because of his family's ties to the Awami League. There is no dispute that Mr. Islam had the assistance of counsel when he prepared this 2004 application, and although the application itself does contain only a small block of space, it's disingenuous to say that he wasn't able to present a more robust claim because he had the assistance of counsel when he prepared the application, and he had the assistance of counsel at his first asylum interview in 2005. He could have presented a declaration or a supplemental statement just as he did in 2006. In 2006, his statement was 13 pages long, single-spaced and typed, detailing at least 10 instances of mistreatment, very detailed, and many of the incidents resulted in alleged serious injury. For instance, beatings in 1992 of them. In 2001, he went into hiding, allegedly, because of threats. In September of the same year, he was chased by armed terrorists, and these detailed events go on and on in his 2006 statement. But in his 2013 testimony, he only testified to three events, the arrest in 1998, the visit by BNP Bangladesh National Party members to his home in 2003, and an arrest in 2004. He failed to mention any of the other instances that he writes in his 13-page declaration, and when asked to explain why he didn't reveal his political activism or mistreatment in the 04 application, he first said that he was afraid that the instances of mistreatment would be somehow used against him in his asylum application. But then, during his testimony before the immigration judge, he kind of wavered back and forth, saying, no, I didn't tell my attorney at the time, and finally, yes, I did tell my attorney, and I'm not sure why he didn't include that in my 2004 application. And that's on page 195 of the record. Mr. Islam has also conceded that some of his declaration is simply not true. Whole paragraphs of specifically detailed events simply concocted or fabricated, and we don't necessarily know why or how that happened, but he has conceded that some of it is untrue. The events in question that were left off the 04 application are not supplemental events. They make up an entirely new claim based on his own political activities and experiences, and they cannot be considered a supplement to his original application. Is this his own political activity? He talks about the, I guess that was with the Awami? Yes. And then the counsel says, well, that switches back and forth every four years. That's actually not entirely accurate, but not all the information is in the record. So if we're going by the record evidence, yes, the party switched back and forth. The Awami was in power from 96 to 2001, and then the Bangladesh Nationalist Party was back in power in 2001. However, the Awami Party won the election in 2008, and they have been in power ever since. At the 2013 hearing before the judge, there was an upcoming election. Mr. Islam testified that there was an election coming up in October of 2013 and that he feared that the Bangladesh Nationalist Party would win again. They actually didn't win. They're still in power, but that evidence is not in the record. That's just information you could find in the current Department of State human rights reports online. The board also agreed with the judge that there were several inconsistencies between his testimony and his declaration, including the fact that his first arrest, he testified several times his first arrest was in 1998, but it was actually in 1990 according to his 13-page declaration. There was also the discrepancy in the dates and length of detention for his second arrest in 2004, and like I said, the omission of all of these other instances of beatings, that he went into hiding, that his best friend was allegedly murdered, that he was chased by armed terrorists. All of these incidents were left out of his 2013 testimony, and notably in Mr. Islam's opening brief to this court, he doesn't address any of those inconsistencies. The only one he addresses is one that was not relied on by the board, the medical clinic inconsistency. The board specifically declined to rely on that inconsistency and stated so in its footnote 5 on page 4. So the fact that Mr. Islam has failed to address these specific inconsistencies shows us that he can't possibly show the evidence compels a contrary finding when he's failed to address the very inconsistencies relied on by the agency. Well, he hasn't been there for 16 years, right? Mr. Islam, yes, he hasn't been there since 2004, and that was the second time he entered. He entered in 2003 in June, and he returned to Bangladesh in September after he was told that his father had a heart attack in August, and then he returned again to the United States in 2004, and he's been here ever since. Well, I mention that because who knows him? How is he identified when he goes back? I'm sorry? When he goes back, if he were to go back there after all these years, does he still have anybody that knows who he is? Well, Mr. Islam testified at his hearing that there were still threats coming to his father every so often, even until 2013. However, the judge found that he wasn't credible, so we don't credit those. His father's still living, I guess. Yes, his father's still living. Nothing has happened to his parents or his family in all of the time that he's been in the United States, despite the fact that he himself says his father is a well-known intellectual and influential party member in the Awami Party. Nothing's happened to his family, although he says that there were still threats coming through. Because he doesn't really meaningfully address the substantial evidence standard of review, we believe that the substantial evidence supports the agency's finding that he provided inconsistent accounts and inconsistent testimony as to why he was seeking asylum, and he hasn't showed or even argued that the evidence compels a contrary result. We, therefore, ask that you affirm the judge's and board's decision in this case. Thank you, Ms. Stabianu. Ms. Bennett. All right, the case is taken under advisement.